IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 FEB 19 AM 9:21
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ KKC
         DEPUTY

**LEAHNN WYLY,**

     **Plaintiff,**

-vs-                   Case No. A-13-CA-170-SS

**W.F.K.R., INC. d/b/a Sugar's Uptown Cabaret,**
     **Defendant.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant W.F.K.R., Inc. d/b/a Sugar's Uptown Cabaret (WFKR)'s Motion for Summary Judgment [#28], Plaintiff Leahnn Wyly's Response [#32], and WFKR's Reply [#38]; and WFKR's Unopposed Motion for Leave to Exceed Page Limit [#37]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This is a hostile-work-environment case brought pursuant to Title VII of the Civil Rights Act of 1964. Wyly previously worked as a waitress at Sugar's Uptown Cabaret, a strip club in Austin, Texas. While employed at Sugar's, Wyly alleges she was sexually harassed by one of her managers, Wilbur Peterson. The summary judgment record establishes the following:

Wyly worked at Sugar's from July 2010 until June 20th, 2011. Mot. Summ. J. [#28-1], Ex. A (Wyly Depo.), at 29–30. Wyly was directly supervised by Peterson, though Don King was "the boss." *Id.* at 32–33. Wyly attests Peterson said "crude type things" to her throughout her

employment, which she found offensive but never complained of to anyone. *Id.* at 36–37. On February 14, 2011, when neither Wyly nor Peterson were working (but both were at Sugar's), Wyly contends Peterson placed his hand down the front of her pants despite her protests. *Id.* at 34. Wyly contends this incident was witnessed by a bar manager, Carlos Valdez. *Id.* at 33–34. She also told her friend Jeni Yarger, a bartender, about the assault. *Id.* A second incident occurred on June 3, 2011, when Peterson placed a hand around Wyly's neck and told her (somewhat more crudely) he wanted to have sex with her.[1] Wyly reported this incident to Don King via text message the same day. *Id.* at 90. Peterson was fired from Sugar's within three days. Wyly was also fired later the same month.

This lawsuit followed. Discovery has been completed, and WFKR now moves for summary judgment on Wyly's hostile-work-environment claim.

## Analysis

### I.   Motion for Summary Judgment—Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences

---

[1] The two major incidents—first in February, and later in June—are described in more detail in Wyly's Amended Complaint. Neither party has identified summary judgment evidence so describing the events, instead citing to the allegations in the complaint. However, because the parties appear to agree these two events occurred as described, the Court assumes there is sufficient evidence to prove as much.

drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.   Application

"A hostile-work-environment claim consists of five elements: (1) the plaintiff belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *Hockman v. Westward Comm'cns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004).

Although the parties' briefing focuses primarily on the fourth element, this case is easily disposed of by the fifth. "A defendant may avoid Title VII liability when harassment occurred but the defendant took 'prompt remedial action' to protect the claimant." *Williams-Boldware v. Denton Cnty., Tex.*, No. 13-40044, 2014 WL 349749, at *4 (5th Cir. Jan. 31, 2014). Whether an employer's response to reported harassment constitutes prompt remedial action "is a fact-specific inquiry," and includes consideration of the timing and severity of the employer's response, as well as the effectiveness of the response. *See id.* (discussing several exemplary cases where employers were deemed to have taken prompt remedial action as a matter of law). "The plaintiff bears the burden of showing that his employer failed to take effective action." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 616 (5th Cir. 1999).

In this case, the undisputed evidence shows WFKR took prompt remedial action to end Peterson's harassment of Wyly. It is undisputed Wyly did not report the generalized, ongoing "crude type things" Peterson said to her to anyone. Nor did she report the February incident to any appropriate supervisory employee.[2] Wyly did report the June incident to "the boss," Don King, and

---

[2] At most, it appears Wyly "reported" the incident to Valdez, a bar manager and eyewitness, whom neither side contends had any authority to reprimand or discipline Peterson. Wyly's report of the event to Yarger, a bartender, also did not put any supervisor on notice of the harassment. Moreover, Wyly's deposition establishes she maintained a strong

Peterson was fired within three days. WFKR's decision to terminate the allegedly harassing employee within days of learning of his harassment is sufficient to avoid Title VII liability. In fact, WFKR likely could have avoided liability even with a lesser sanction, though it would still have needed to be effective in preventing future harassment. *See Williams-Boldware*, 2014 WL 349749, at *4 ("Employers are not required to impose draconian penalties upon the offending employee in order to satisfy [the Fifth Circuit's] prompt remedial action standard."). WFKR's termination is consistent with the kinds of prompt remedial action deemed to have insulated other employers from Title VII liability as a matter of law. *See, e.g., id.* at *5–6 (verbal reprimand, mandatory diversity training, and assignment of new supervisor sufficient); *Skidmore*, 188 F.3d at 616 (instructing offending employee to leave plaintiff alone and transferring employee to different shift sufficient); *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794 (5th Cir. 1994) (distribution of anti-harassment memorandum and holding of informational meetings with employees sufficient); *Houston v. EBI Cos.*, 53 F.3d 1281, 1995 WL 295897, at *2 (5th Cir. 1995) (unpublished) (verbal reprimand alone sufficient). Because the undisputed evidence establishes WFKR took prompt remedial action by firing Peterson upon learning of the harassment, Wyly cannot succeed on her hostile-work-environment claim and this Court "need not address whether the conduct in question was sufficiently severe or pervasive to create a hostile work environment." *Williams-Boldware*, 2014 WL 349749, at *5.

---

relationship with King, and thus could have reported incidents to him as she did in June. *E.g.*, Wyly Depo. at 39 ("Don King was there all of my shifts, and he—he really looked out for all of—all of us. I felt comfortable with him."); *id.* at 37 ("I didn't want to work on [Peterson's] shifts, and whenever he was—Don King was—was my—was my manager."); *id.* at 40 ("There was a lot of good people that were at Sugar's. I had a lot of good regulars. I love Don King, the bartenders."); *id.* at 42 ("I really—I really liked working with Don King. He was—Everybody else was—It was a really enjoyable shift.").

Alternatively, summary judgment is warranted because Peterson's harassment of Wyly did not "affect[] a term, condition, or privilege of employment." *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (internal quotation marks omitted). To be actionable, harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotation marks omitted). The Court must analyze all the circumstances of the plaintiff's employment, not just the alleged harassment. *Id.*; *see also Lauderdale v. Tex. Dep't of Crim. Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) ("In determining whether an environment is hostile or abusive, the court must look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; . . . whether it unreasonably interferes with an employee's work performance, and whether the complaint of conduct undermined the plaintiff's workplace competence." (internal quotation marks and citations omitted)). The ultimate question is whether the work environment was "'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Hernandez*, 670 F.3d at 651 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

Wyly complains of three incidents of harassment across her year of employment as Sugar's. The first, Peterson's saying of "crude type things," is so vague as to be almost meaningless. Title VII "is not a general civility code, and simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of

employment." *Lauderdale*, 512 F.3d at 163 (internal quotation marks omitted).[3] The second, Peterson's physical assault of Wyly, occurred at Sugar's, but when neither individual was working. Wyly Depo. at 37–38. The third, Peterson's verbal sexual advance, is the most clear cut incident of workplace harassment. It is also the only incident Wyly reported, and is the reason Peterson was promptly terminated.

There is no doubt Peterson's behavior, particularly the two specific incidents, is inappropriate. But even assuming Peterson's actions were objectively abusive, there is ample evidence Wyly did not consider her work environment to be hostile, let alone hostile enough to affect her employment. Wyly contends she was present at Sugar's the night of the physical assault to see friends; voluntarily returning to one's place of employment for leisure purposes is strong evidence the environment there was not subjectively hostile. Additionally, Wyly has testified her job "was a really enjoyable shift," and outside of Peterson, her coworkers "were good to [her], [they] were like a team." Wyly Depo. at 42, 84; *see also* Wyly Depo. at 154 ("We're a team. Not [Peterson], but everyone else. We were a team, like family."). Wyly continued to work at Sugar's for roughly four months after Peterson touched her, which is also evidence Wyly did not subjectively believe the work environment at Sugar's was hostile. There is no evidence the harassment was "so severe and pervasive that it destroy[ed] [her] opportunity to succeed in the work place." *Hockman*, 407 F.3d at 326 (internal quotation marks omitted). Nor was there any implicit or explicit "message that [she was] incompetent because of her sex." *Id.* (internal quotation marks omitted); *see also Shepherd v. Comptroller of Pub. Accounts of Tex.*, 168 F.3d 871, 874–75 (5th Cir. 1999) (affirming grant of

---

[3] Although it is no excuse for Peterson's conduct, Wyly herself acknowledged "[a] lot of crude comments get made in the gentleman's club." Wyly Depo. at 36. Considering the totality of the circumstances includes considering any idiosyncracies of the particular work environment, including the sexualized nature of the business in this case.

summary judgment where harassing conduct did not unreasonably interfere with plaintiff's work performance or undermine plaintiff's workplace competence); *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998) ("A plaintiff, however, must show that implicit or explicit in the sexual content is the message that the plaintiff is incompetent because of her sex, and the plaintiffs cannot draw such a connection here."). Absent evidence of these things, there is no genuine dispute the work environment at Sugar's was not so hostile or abusive as to affect a term, condition, or privilege of Wyly's employment.

## Conclusion

Accordingly,

IT IS ORDERED that Defendant W.F.K.R., Inc. d/b/a Sugar's Uptown Cabaret's Motion for Summary Judgment [#28] is GRANTED;

IT IS FINALLY ORDERED that Defendant W.F.K.R., Inc. d/b/a Sugar's Uptown Cabaret's Unopposed Motion for Leave to Exceed Page Limit [#37] is GRANTED.

SIGNED this the 18th day of February 2014.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE